# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| WINCO WINDOW COMPANY, INC., | ) |
| Plaintiff, | ) No. 4:15-CV-309 RLW |
| v. | ) |
| G & S GLASS & SUPPLY, INC. and W.G. YATES & SONS CONSTRUCTION CO., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant G&S Glass & Supply, Inc.'s Motion to Dismiss (ECF No. 13) and Plaintiff Winco Window Company, Inc.'s Motion for Preliminary Injunction (ECF No. 19). These motions are fully briefed and ready for disposition.

## BACKGROUND[1]

On July 27, 2012, W.G. Yates & Sons Construction ("Yates"), as agent for Auburn University, entered into a subcontract with G & S Glass & Supply, Inc. ("G&S") relating to construction of a the Auburn South Donahue Residence Hall at Auburn University in Auburn, Alabama (the "Project"). (Verified Complaint ("Complaint" or "Compl."), ECF No. 1, ¶10). On or about July 12, 2012, Winco Window Company, Inc. ("Winco"), who manufactures and sells windows, received an Auburn University Purchase Order to provide aluminum windows and storefront panning related to the Project. (Compl., ¶11). On or around July 16, 2012, Winco

---

[1] When ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

returned the Auburn University Purchase Order and indicated on the Purchase Order and through an accompanying letter that Winco did not accept the Purchase Order and attached Winco's Terms and Conditions of Sale. (Compl., ¶13). Winco's Terms and Conditions also included an arbitration provision. (Compl., ¶13). Winco did not receive a written response to its July 16, 2012 letter and no party signed or acknowledged Winco's Terms and Conditions of Sale. (Compl., ¶14). Nevertheless, Winco provided the windows for the Project. (Compl., ¶15).

On or about December 23, 2013, G&S filed a Demand for Arbitration with the American Arbitration Association ("AAA") against Yates and its surety, Fidelity & Deposit of Maryland, arising of the subcontract between G&S and Yates (hereinafter "the Arbitration"). (Compl., ¶19). G&S sought $129,335.32 in damages from Yates. (Compl., ¶20).

On or about January 13, 2014, Yates filed an Answering Statement and Counterclaim Request in the Arbitration seeking $250,000 in its counterclaim against G & S. (Compl., ¶21). On or about May 5, 2014, G&S filed an Amendment to Demand for Arbitration with the AAA seeking to join Winco to the Arbitration pursuant to the Terms and Conditions of the Auburn University Purchase Order. (Compl., ¶23). Winco objected to its joinder in the Arbitration, but a specially appointed Arbitrator determined "it is clear, at a minimum, Winco agreed to arbitrate all disputes and claims." (Compl., ¶24; ECF No. 1-4). On or about November 12, 2014, Yates, in its own capacity, asserted a crossclaim against Winco in the Arbitration. (Compl., ¶¶25, 26). The location of the Arbitration has not yet been determined. (Compl., ¶28).

In the Complaint, Winco alleges claims for Preliminary Injunction (Count I), Application to Permanently Stay Arbitration (Count II), and Declaratory Judgment (Count III). Winco claims that it never agreed to any of the terms or conditions of the Auburn University Purchase Order, particularly not the arbitration term. (Compl., ¶12). Winco argues that it never entered

into a contract with G&S relating to the Project. (Compl., ¶16). Likewise, Winco states that it never entered into a contract with Yates and that Yates was expressly acting as Auburn University's limited agent. (Compl., ¶17). The Auburn University Purchase Order stated, "Contractor [Yates] is a limited agent of Auburn University pursuant to the Agency Appointment and Procurement Agreement for this project." (Compl., ¶17). Winco argues that any contract Winco entered into relating to the Project was with Auburn University but the terms of any such contract did not include the Terms and Conditions of the Auburn University Purchase Order. (Compl., ¶18).

## DISCUSSION

### I. MOTION TO DISMISS

#### A. Standard of Review

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

**B. Discussion**

**1. Allegations in the Complaint**

As an initial matter, Winco argues that its allegation in the Complaint that there was no agreement under which it agreed to arbitrate the claims with G&S and Yates must be taken as true because it was "factually supported." (ECF No. 18 at 5). Winco argues that because it has alleged that "there was no such agreement to arbitrate, Winco has stated a 'facially plausible claim' that this Court has the authority to decide arbitrability because there can be no 'clear and unmistakable evidence' Winco intended otherwise." (ECF No. 18 at 5-6). G&S, however, notes that the Court is not limited to reviewing the facts in the Complaint, but may also "consider those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). G&S contends that if the Court looks at other materials, such as the exhibits to Winco's Complaint, then it can determine that the parties intended to arbitrate any claims arising out of the window purchase. (ECF No. 28 at 3).

The Court agrees that it cannot simply take Winco's allegations in the Complaint in a vacuum without considering the other documents embraced by the Complaint. The Court is not required to deny the motion to dismiss based solely upon Winco's self-serving legal conclusion that there was no agreement to arbitrate. Therefore, the Court considers the purchase orders, which both mandate arbitration, when it determines whether there was an agreement to arbitrate.

**2. Arbitrator Should Decide Issue of Arbitrability**

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*

*Inc.*, 473 U.S. 614, 626 (1985). "'[I]f the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so.'" *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 737 F.3d 492, 495 (8th Cir. 2013) (quoting *Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 999 (8th Cir. 2006)). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986).

"Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability." *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002) (delineating potentially dispositive threshold issues between "questions of arbitrability" and "procedural questions")). The Court "presume[s] threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc.*, 756 F.3d at 1100; *Howsam*, 537 U.S. at 83; *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 701 (8th Cir. 2008).

G&S argues that the incorporation of the AAA rules into the terms and conditions of both purchase order is "clear and unmistakable evidence" that the parties intended to allow the arbitrator to answer the question of arbitrability. (ECF No. 14 at 3). Both Auburn/Yates' and Winco's purchase orders explicitly incorporate the AAA's rules into their terms and conditions. (ECF No. 1-1 at 1C at ¶12). Winco's arbitration clause provides, "The parties agree that all disputes and claims shall be settled by an arbitration in accordance with rules of the American Arbitration Association....The parties agree to be bound by the award in accordance with the

Commercial Rules of said Association." (ECF No. 1-1 at 1C). Auburn/Yates' arbitration clause provides, "Any claims or disputes arising out of or related to this PO [Purchase Order] shall be resolved by binding arbitration in accordance with the current and applicable rules and procedures of the American Arbitration Association." (ECF No. 1-2 at 2). The Eighth Circuit has "previously held the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability." *Eckert/Wordell Architects, Inc.*, 756 F.3d at 1100 (citing *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (noting the AAA Rules empower the arbitrator to determine his or her own jurisdiction over a controversy between the parties)); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("we conclude that the arbitration provision's incorporation of the AAA Rules ... constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator"); *see also Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005). G&S also argues that the decision of the arbitrator should be given an "extraordinary level of deference." *Boise Cascade Corp. v. PACE Local 7-0159*, 309 F.3d 1075, 1080 (8th Cir. 2002) (citing *Electrolux Home Products v. United Auto. Aerospace & Agr. Implement Workers of Am.*, 416 F.3d 848, 853 (8th Cir. 2005)). Further, G&S argues that under UCC §2-207(3)[2] there was mutual manifestation of an intent to

---

[2] G&S cites to the old UCC §2-207(3), which provides: "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act."

The more recent version of § 2-207 provides:

> Subject to Section 2-202, if (i) conduct by both parties recognizes the existence of a contract although their records do not otherwise establish a contract, (ii) a contract is formed by an offer and acceptance, or (iii) a contract formed in any

arbitrate and the arbitration clause was made a part of the parties' contract regardless of which terms and conditions control. (ECF No. 28 at 3-4). G&S claims it is disingenuous for Winco to claim that it did not agree to arbitration when it expressly conditioned its acceptance of Auburn's Purchase Order on the acceptance of Winco's Terms and Conditions, which included an arbitration provision. (ECF No. 28 at 4).

Winco claims that the arbitration provision never became part of the agreement between Winco and Auburn/Yates because there was no meeting of the minds between these parties. (ECF No. 18 at 10). Thus, Winco maintains "there is no arbitration term at all for G&S and Yates to attempt to enforce—either as a signatory or nonsignatory." (ECF No. 18 at 10). Winco argues that the question of arbitrability is for the Court to decide, not the arbitrator because there was no "clear and unmistakable evidence" that Winco intended otherwise. (ECF No. 18 at 6-7). Winco maintains that it did not agree to arbitrate any with G&S or Yates because (1) neither G&S nor Yates were a party to either of the purchase orders relied upon by G&S and they cannot enforce them, and (2) Winco and Auburn University did not accept the terms of either purchase order and, therefore, the terms of these purchase orders did not become the terms of the contract, including the arbitration term under which G&S brings the Arbitration. (ECF No. 18 at 7; *see also* UCC §2-207(3).

The Court finds that the parties agreed to arbitrate the issue of arbitratiblity, as demonstrated by Winco and Yates, as agent for Auburn, both including arbitration provisions in

---

manner is confirmed by a record that contains terms additional to or different
from those in the contract being confirmed, the terms of the contract are:
(a) terms that appear in the records of both parties;
(b) terms, whether in a record or not, to which both parties agree; and
(c) terms supplied or incorporated under any provision of this Act.

their proposed purchase orders and both incorporating the AAA Rules as part of their arbitration provision. *See Eckert/Wordell Architects, Inc.*, 756 F.3d at 1100; *Fallo*, 559 F.3d at 878. Further, the Court does not believe that the arbitration provision was not made a part of the agreement or was knocked out under UCC §2-207(3). The agreement was confirmed between Winco and Yates, as agent for Auburn, when the parties continued their course of conduct and Winco provided (and G&S/Yates accepted) the windows. Therefore, the terms of that contract include any "terms that appear in the records of both parties," which includes the arbitration provisions. *See* UCC §2-207(3).

Based upon the foregoing, the Court holds that Winco agreed to arbitrate any dispute arising out of its procurement of windows for the Project, including the agreement to arbitrate the issue of arbitrability. Therefore, the Court dismisses Winco's claims because the issue of the arbitrability of its claims is properly before the arbitrator.

### 3. Enforceability of Arbitration Agreement by Nonsignatory

Further, even if the Court must determine whether a nonsignatory, such as G&S, can compel a signatory plaintiff to arbitrate claims under a valid arbitration agreement, the Court finds that G&S should be permitted to enforce the arbitration agreement under the circumstances in this case.

G&S argues that it should be permitted to enforce the arbitration provision even as a non-signatory to Winco's agreement with Auburn/Yates as agent. (ECF No. 14 at 7); *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010) ("a nonsignatory may compel a signatory to arbitrate claims in limited circumstances"). First, G&S argues that under agency theory, a non-signatory may compel arbitration based upon the non-signatory's close relationship with a signatory. (ECF No. 14 at 7); *see PRM Energy Sys., Inc.*, 592 F.3d at 834 (citing *CD*

*Partners, LLC,* 424 F.3d at 798-99 ("The first relies on agency and related principles to allow a nonsignatory to compel arbitration when, as a result of the nonsignatory's close relationship with a signatory, a failure to do so would eviscerate the arbitration agreement."); *see also Finnie v. H & R Block Fin. Advisors, Inc.*, 307 F. App'x 19, 21 (8th Cir. 2009) (citing *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798-800 (8th Cir. 2005)) (relationship must be "sufficiently close").

G&S argues that both Yates and G&S have a close enough relationship with Auburn, as contractors performing work for and on behalf of Auburn, to invoke the Winco arbitration clause. (ECF No. 14 at 7). G&S claims that Yates has express agency by virtue of the "Agency Appointment and Procurement Agreement" referenced at the bottom of the Auburn University Purchase Order. (ECF No. 14 at 7-8 (citing ECF No. 1-1 at 1)). G&S is also referenced in the same Auburn University Purchase Order wherein it states that invoices should be sent to "Auburn University c/o G&S Glass & Supply, Inc." G&S argues that it should be entitled to assert indemnity and other related claims against Winco in arbitration for any damages attributed to window design or manufacturing defects. (ECF No. 14 at 8). Otherwise, G&S would be forced to arbitrate with Yates alone and then separately litigate with Winco. (*Id.*) Under such circumstances, G&S claims that the arbitration agreement would be "eviscerated" if Winco were not made a party to the arbitration. (*Id.*)

G&S contends that, under the second estoppel theory, a non-signatory may compel arbitration when the claims are intertwined with the agreement containing the arbitration clause. (ECF No. 14 at 8); *PRM Energy Sys., Inc.*, 592 F.3d at 834 (citing *CD Partners,* 424 F.3d at 799) ("The second relies loosely on principles of equitable estoppel, broadly encompasses more than one test for its application, and has been termed 'alternative estoppel.' ... Alternative estoppel typically relies, at least in part, on the claims being so intertwined with the agreement containing

the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement."). G&S notes that many factors support its ability to enforce the arbitrability agreement under the agency theory. First, as the R-7 arbitrator noted, Winco "agreed to arbitrate, at a minimum, 'all disputes and claims,' without limiting the persons with whom it may arbitrate." *See* ECF No. 1-4, at 3. G&S maintains that the three parties involved here—the general contractor, subcontractor window installer, and window manufacturer—are all intimately involved in and intertwined over the leaking window dispute. (ECF No. 14 at 9). G&S asserts the claims against Winco by Yates and G&S are the same or, in the alternative, that all of the claims flow through the Purchase Order by which Winco supplied windows to the Auburn project and received payment. (ECF No. 14 at 9).

In response, Winco argues that the cased cited by G&S are different from the instant case because they involve arbitration agreements signed by the party resisting arbitration. *See Fallo; Green; Contec*. Winco maintains that it did not agree to arbitrate with G&S and Yates and, therefore, G&S cannot claim that Winco agreed to have an arbitrator decide if Winco must arbitrate. (ECF No. 18 at 9).

Winco further argues that, even if there were an agreement to arbitrate, G&S and Yates cannot enforce the agreement. (ECF No. 18 at 9-13). Winco argues that G&S's ability to arbitrate must be considered separate from Yates' ability to arbitrate. (ECF No. 18 at 10-11). Winco asserts that G&S and Yates were not parties to the Auburn University Purchase Order and they had no contract with Winco. (ECF No. 18 at 11). Likewise, Winco claims that G&S and Yates were not third party beneficiaries or otherwise able to assert any rights derived from the contract between Winco and Auburn University. (ECF No. 18 at 11).

Winco argues that, unlike the cases cited by G&S, G&S, the nonsignatory, is "on the offense" in bringing these claims, not the defense. (ECF No. 18 at 12; *cf. Finnie*, 307 F. App'x 19; *CD Partners, LLC*, 424 F.3d 795; *Contec Corp..*, 398 F.3d 205; *PRM Energy Sys., Inc.*, 592 F.3d 830). Second, Winco states that the relationships between G&S and Auburn and between Yates and Auburn are not sufficiently close to allow a nonsignatory (G&S) to enforce an arbitration agreement. (ECF No. 18 at 12). Winco argues that G&S's and Yates' roles as subcontractor and contractor for Auburn are not equal to that of (1) an employee of the signatory being sued for actions taken during his employment, *see Finnie, supra*; (1) a manager of the signatory company being sued for actions taken on behalf of the company, *see CD Partner, supra*; and (3) a surviving successor company to the signatory, *see Contec, supra.* (ECF No. 18 at 12). Third, Winco asserts that, contrary to the facts in *PRM Energy*, G&S and Yates are asserting claims against Winco, not based upon the wrongful conduct against G&S and Yates as in *PRM Energy*.

The Court finds that the closeness between the parties and the intertwined nature of the claims requires that Winco be compelled to participate in arbitration with nonsignatories G&S and Yates. *See Eckert/Wordell*, 756 F.3d 1098 (FJM Properties of Willmar, LLC could compel arbitration pursuant to a contract it did not sign with Eckert Wordell). The Eighth Circuit has held that "the signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Contec*, 398 F.3d at 209. The Court holds that the intertwined relationships and agreements require that G&S, as a nonsignatory, be able to compel arbitration of the issue of arbitrability. First, there is or was an undisputed relationship between Winco and G&S and Yates. Winco supplied the windows for

the Auburn University Project, G&S was the subcontractor who installed the windows, and Yates was the general contractor. Second, Winco was a party to the agreement to arbitrate with Auburn. Winco and Yates, as agent for Auburn, both agreed to submit any disputes arising out of the project to arbitration. Finally, the dispute at issue arose as part of that same agreement that includes the arbitration provision. Winco conducted itself as subject to an agreement to supply windows to G&S as subcontractor and Yates as general contractor for Auburn. Yates' and G&S's claims against the non-signatory Winco "rely on and arise out of" the window procurement agreement containing the arbitration clause. *Senda v. Xspedius Commc'ns, LLC*, No. 4:06CV1626-DJS, 2007 WL 781786, at *3 (E.D. Mo. Mar. 13, 2007) (dismissing claims in favor of arbitration). G&S's claim against Winco arises from the acquisition of allegedly faulty windows from Winco. Further, G&S's claim includes a claim for indemnification from Winco for any counterclaim by Yates related to the windows. G&S's claim against Winco, therefore, clearly arises out of Auburn's purchase of windows from Winco for the Project and thus falls within the scope of the arbitration clauses.

The Court also finds that Yates, as general contractor, and G&S, as the subcontractor installing the windows, are also third party beneficiaries of the contract to purchase windows. Their claims are based upon and arise from the acquisition of windows by Auburn that was intended to benefit them. Winco undeniably accepted the benefits of its agreement with G&S and Yates to supply windows for the Auburn project. The Court finds that parties acted in accordance with their agreement for Winco to supply windows even though Winco now claims that there was no agreement between the parties. The Court believes that the claims at issue in this case are "so intertwined with the agreement containing the arbitration clause that it would be

- 12 -

unfair to allow" Winco to accept the benefit of its agreement but to disavow availability of the arbitration clause of that same agreement. *See PRM Energy Sys., Inc.*, 592 F.3d at 834.

Therefore, the Court holds that G&S can enforce the arbitration agreement and the Court grants G&S's motion to dismiss.

## II. MOTION FOR PRELIMINARY INJUNCTION

Although the Court's grant of G&S's motion to dismiss largely disposes of Winco's Motion for Preliminary Injunction, the Court will address the arguments therein briefly.

### A. Standards for a Motion for Preliminary Injunction

"[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 114 (8th Cir. 1981). The burden of establishing the propriety of a preliminary injunction is on the movant. *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994); *Modern Computer Sys., Inc., v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737 (8th Cir.1989) (*en banc*); *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 955 (N.D. Iowa 2006). "'No single [*Dataphase*] factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction.'" *Baker Elec. Co-op.*, 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir.1987) (citing *Dataphase*, 640 F.2d at 114)). "However, a party moving for a preliminary injunction is required to show the threat of irreparable harm." *Baker Elec. Co-op.*, 28 F.3d at 1472 (citing *Modern Computer Sys.*, 871 F.2d at 737; *Dataphase*, 640 F.2d at 114).

### B. Discussion

Winco argues that the Court, not the arbitrator, should determine arbitrability because there is no agreement under which G&S and Yates can enforce Winco to arbitrate their claims. (ECF No. 20 at 6-8) (citing *U.S. for Use & Benefit of Capital Elec. Const. Co. v. Pool & Canfield, Inc.*, 778 F. Supp. 1088 (W.D. Mo. 1991)).[3] Winco notes that neither G&S nor Yates were a party to the "alleged arbitration term" because Winco's only contract relating to the Project was with Auburn. Winco also argues that no arbitration term because part of the contract between Winco and Auburn because there was no meeting of the minds regarding the terms reached and, pursuant to UCC §2-207, neither of the proposed arbitration terms became a part of the contract. (ECF No. 20 at 8).

Winco claims it is entitled to a preliminary injunction to stay the arbitration while this Court determines arbitrability. Winco argues that all four *Dataphase* factors weigh in favor of granting preliminary injunctive relief. First, Winco states that it would be irreparably harmed if it were forced to arbitrate because it would lose its legal right to access to the court, particularly because it never agreed to arbitrate any claims with G&S and Yates. (ECF No. 20 at 10-12). For this same reason, Winco maintains that the balance of harms weighs in favor of granting preliminary injunctive relief. That is, Winco asserts that the harm of having to arbitrate claims that it never

---

[3] The *Capital Elec. Constr. Co.* district court held that there was no agreement between plaintiff and defendant, Safeco, obligating Safeco to arbitrate plaintiff's claims. *Capital Elec. Constr. Co.*, 778 F. Supp. 1088, 1090 (W.D. Mo. 1991). The district court specifically noted that "[t]he surety relationship existing between defendant and Pool & Canfield arises out of the Miller Act, specifically that portion of the act embodied in 40 U.S.C. § 270a (1988)." *Id.* As a result, Safety, as a Miller Act surety, could not have been subject to arbitration. *See* id. ("As a Miller Act surety, however, plaintiff's legal recourse for seeking compensation from defendant is exclusively limited to federal district court."). Therefore, Winco's reliance on this case is misplaced because arbitration was not an option as to a Miller Act surety.

agreed to arbitrate outweighs maintaining the "status quo" for G&S and Yates. (ECF No. 20 at 13). Third, Winco argues that it has a strong likelihood of success on the merits because there is no agreement to arbitrate by which G&S and Yates seek to require arbitration. (ECF No. 20 at 13-14). Finally, Winco states that compelling it to arbitrate when it never agreed to do so would be against the public interest. (ECF No. 20 at 14).

In response, Yates and G&S argue that they can enforce the arbitration agreement against Winco because (1) Winco entered into the contract with Yates as agent for Auburn or (2) Yates and G&S can enforce the arbitration agreement even though they are non-signatories. (ECF No. 24 at 7-8). Yates and G&S argue that Winco is not entitled to preliminary injunctive relief because the "parties' writings agree that all claims and disputes shall be settled through arbitration according to the AAA rules, pursuant to UCC 2-207," and "this term became an enforceable term of the contract between Winco and Yates as agent." (ECF No. 24 at 4; ECF No. 26 at 4). Therefore, Yates and G&S maintain that all claims and disputes arising out of this contract shall be submitted to arbitration. (ECF No. 24 at 4; ECF No. 26 at 2-3). Further, G&S and Yates maintain that Winco cannot satisfy any of the *Dataphase* factors because Winco cannot incur any irreparable harm from participating in arbitration pursuant to its agreement. (ECF No. 26 at 3-5) (citing *Bartlett Grain Co., L.P. v. Am. Int'l Grp.*, No. 11-0509-CV-W-ODS, 2011 WL 3274388, at *5 (W.D. Mo. July 29, 2011)). Likewise, G&S and Yates claim that Winco will not be successful on the merits because it agreed to arbitrate all claims arising out of and related to the purchase of the windows and it agreed to have the issues of arbitrability decided by an arbitrator. (ECF No. 26 at 5) (citing *Bartlett Grain Co., L.P.*, 2011 WL 3274388, at *5). Finally, G&S and Yates contend that it is not against public interest to compel Winco to

arbitration because Winco should be held to the arbitration agreement to which it agreed. (ECF No. 26 at 5) (citing *Bartlett Grain Co., L.P.*, 2011 WL 3274388, at *5).

Based upon the its prior discussion on G&S's Motion to Dismiss, the Court holds that because Winco agreed to the arbitration clause, it cannot show irreparable harm caused by the arbitration proceedings, nor can it show a probability of success on the merits of its motion. Further, the public interest is served by requiring Winco to satisfy its agreement to arbitrate at least the issue of arbitrability. Winco's motion for a preliminary injunction is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant G & S Glass & Supply, Inc.'s Motion to Dismiss (ECF No. 13) is **GRANTED** and Plaintiff Winco Window Company, Inc.'s Motion for Preliminary Injunction (ECF No. 19) is **DENIED**.

Dated this 5th day of June, 2015.

                                                              **RONNIE L. WHITE**
                                                              **UNITED STATES DISTRICT JUDGE**